Jose VELASQUEZ, Petitioner,

v.

Janet RENO, Attorney General; Doris Meissner, Commissioner of the Immigration & Naturalization Service; Andrea Quarantillo, District Director; Colleen S. Passifiume, Assistant District Director for Detention and Deportation; and Ralph Green, Warden, Hudson County Correctional Center, Respondents.

No. CIV. A. 99–806 MTB.

United States District Court, D. New Jersey.

April 5, 1999.

Thomas E. Moseley, Newark, NJ, for Plaintiff.

Judy Rabinovitz, American Civil Liberties Union of New Jersey, Newark, NJ, for ACLUF.

Faith S. Hochberg, United States Attorney by Collette R. Buchanan, Newark, NJ, for Defendants.

## OPINION

BARRY, District Judge.

On December 16, 1998, based on a nineteen year old conviction for which he received probation, petitioner, Jose Velasquez, was taken into custody by agents of the Immigration and Naturalization Service ("INS"). Petitioner is being mandatorily detained, without bond and without a hearing on bond, pursuant to section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), pending removal proceedings. He seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, arguing that § 1226(c) cannot be retroactively applied to him as he was released from criminal custody well over a decade before that statutory section took effect. Failing that, he argues that § 1226(c) is unconstitutional both on its face and as applied, violating his Fifth Amendment substantive and procedural due process rights as well as the Eighth Amendment prohibition against excessive bail. For the reasons which follow, the petition will be granted.[1]

1. The American Civil Liberties Union Immigrants' Rights Project ("ACLU–IRP") and the American Civil Liberties Union of New Jersey

### I. *Factual Background*

Respondents concede that a case cannot be imagined with less sympathetic facts for the position they espouse. Tr., March 30, 1999 at 3. Those facts are undisputed. Petitioner was born in the Republic of Panama on May 5, 1947 to Homero Velasquez, a citizen of Panama, and his wife, Jennie Doran, a United States citizen. His father was a member of the Panamanian diplomatic service and petitioner accompanied his father on numerous assignments when he was posted in the United States. When, in 1960, petitioner's father finished an assignment here, petitioner remained in order to complete high school at West Catholic High School in Philadelphia. He was admitted to the United States as a lawful permanent resident on June 23, 1960 and has continuously lived here since that time. Both petitioner's older brother and older sister are United States citizens.

In 1965, petitioner married Johanna Hasson, a United States citizen, and they have three adult children, all of whom were born in the United States and are United States citizens. For many years, petitioner operated the Velasquez Deli in Philadelphia and his wife has worked for ten years at the Mellon Bank in Philadelphia. The couple owns a home in Aldan, Pennsylvania.

In early December 1998, petitioner traveled to Panama to visit his mother who was scheduled to have hip-replacement surgery. Upon his return to Newark Airport on December 16, 1998, he was taken into custody by INS agents and placed in the Hudson County Correctional Center where he remains in detention. The INS served petitioner with a Notice to Appear for removal proceedings, charging him with removal under: (1) INA § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C) (West Supp.1998), as an alien who has been, or has aided or conspired with, an

("ACLU–NJ") have filed a motion to appear as *amici curiae*. The motion is granted.

illicit trafficker in a controlled substance; and (2) INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II) (West Supp.1998), as an alien who has been convicted of, or admits to having committed, a violation of, or conspiracy to violate, a state or federal law relating to a controlled substance.[2]

These charges were based upon the fact that almost nineteen years ago, on May 15, 1980, in Dade County, Florida, petitioner pled guilty to conspiracy to sell and the sale or delivery of a controlled substance and was sentenced to five years probation and a $5,000 fine. Petitioner "was at a party; was approached by a friend and asked if he could sell cocaine; [and] replied that he did not sell cocaine, but that another man at the party might do so." *See* Compl., Exh. A at 5. He claims, and respondents do not dispute, that he never anticipated receiving, and never received, any compensation for any transaction that might thereafter have taken place. Petitioner successfully completed probation and no removal proceedings were initiated against him over the many years prior to the present action. From all accounts, he led an exemplary life prior to the incident in 1980, and he surely has led an exemplary life since then.

Petitioner submits that he has a claim to United States citizenship by virtue of the United States citizenship of his mother and has moved for termination of the removal proceedings before the Immigration Court. On March 8, 1999, petitioner was advised by the Immigration Judge that he lacked jurisdiction to entertain petitioner's request for bond because petitioner is subject to the INA's mandatory detention provision, INA § 236(c)(1), 8 U.S.C. § 1226(c), which took effect on or about October 9, 1998. *See* Compl. ¶ 17. Petitioner now challenges the application of the mandatory detention provision to him.

## II. *Discussion*

As noted above, petitioner asserts that, one, INA § 236(c), 8 U.S.C. § 1226(c), should not be retroactively applied to him as he was released from custody before that statutory section became effective; and, two, 8 U.S.C. § 1226(c) is unconstitutional both as applied and on its face as it violates his Fifth and Eighth Amendment rights. Respondents argue that the petition must be dismissed because (1) this court lacks subject matter jurisdiction; (2) 8 U.S.C. § 1226(c) has been properly applied to petitioner; and (3) 8 U.S.C. § 1226(c) does not violate the Constitution.

### A. *History of the Detention of Aliens Removable for Having Committed Certain Enumerated Crimes*

Before addressing the arguments before this court, it is helpful to review the statutory framework regarding detention of individuals such as petitioner and, most im-

---

**2.** Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), petitioner's brief trip abroad may not have necessitated a new request for admission into the United States and the bars on admissibility found in 8 U.S.C. § 1182(a), which were generally applied to aliens seeking entry for the first time, may not have applied. *See Rosenberg v. Fleuti,* 374 U.S. 449, 462, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963) (holding "that an innocent, casual, and brief excursion by a resident alien outside this country's borders may not have been 'intended' as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an 'entry' into the country on his return"). The IIRIRA replaced the definition of "entry" with a new definition of "admission" such that the INS now treats lawful permanent residents who have committed a crime enumerated in 8 U.S.C. § 1182(a)(2) as making a new application for admission even when returning from a brief trip abroad. *See* 8 U.S.C. § 1101(a)(13)(C) (West Supp.1998); *see also In re Collado,* Int. Dec. 3333, 1998 WL 95929 (BIA 1998) (stating that judicial doctrine of *Fleuti* did not survive the enactment of the IIRIRA and, under 8 U.S.C. § 1101(a)(13), a returning lawful permanent resident who has committed an offense identified in 8 U.S.C. § 1182(a)(2) "shall be regarded as 'seeking an admission' into the United States, without regard to whether the alien's departure from the United States might previously have been regarded as 'brief, casual, and innocent' under the *Fleuti* doctrine").

portantly, the significant changes to the INA's detention provisions that resulted from the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") (collectively as the "1996 amendments").

Under the Immigration and Nationality Act of 1952, the Attorney General had the discretion to release an alien pending a final determination of deportability. The INA provided that:

> Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less that $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole.

8 U.S.C. § 1252(a) (1970).

In 1988, Congress passed the Anti–Drug Abuse Act ("ADAA") which amended the INA and added, *inter alia,* a mandatory detention provision for certain aliens removable for having committed enumerated crimes. As amended by the ADAA, the INA provided that "[t]he Attorney General shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction .... [and] ... the Attorney General shall not release such felon from custody." 8 U.S.C. § 1252(a)(2) (1990), INA § 242(a)(2).

Numerous courts found this mandatory detention provision to be unconstitutional. *See, e.g., Paxton v. United States INS,* 745 F.Supp. 1261, 1265–66 (E.D.Mich.1990); *Leader v. Blackman,* 744 F.Supp. 500, 507–09 (S.D.N.Y.1990); *Kellman v. INS,* 750 F.Supp. 625, 628 (S.D.N.Y.1990); *Probert v. INS,* 750 F.Supp. 252, 257 (E.D.Mich.1990), *aff'd on other grounds,* 954 F.2d 1253 (6th Cir.1992); *Agunobi v. Thornburgh,* 745 F.Supp. 533, 538 (N.D.Ill. 1990); *but see Davis v. Weiss,* 749 F.Supp. 47, 50, 52 (D.Conn.1990); *Morrobel v. Thornburgh,* 744 F.Supp. 725, 728 (E.D.Va.1990).

Congress amended the INA in 1990 to include a provision which allowed for bond for certain lawfully admitted aliens. Section 1252(a)(2)(B) stated:

> The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings.

8 U.S.C. § 1252(a)(2)(B) (1992). Aliens who entered the country illegally and who were detained under the INA without the benefit of a bond hearing succeeded in some courts in challenging the constitutionality of what remained of the mandatory detention provision. *See, e.g., Caballero v. Caplinger,* 914 F.Supp. 1374, 1379–80 (E.D.La.1996).

On April 24, 1996, Congress enacted the AEDPA which deleted the aforementioned exception for legal aliens and again prohibited release pending a determination of deportation for aliens removable for having committed certain enumerated crimes. As amended by AEDPA § 440(c), 8 U.S.C. § 1252(a)(2) provided that:

> The Attorney General shall take into custody any alien convicted of any criminal offense covered in section 1251(a)(2)(A)(iii) [aggravated felony], (B) [possession of controlled substances], (C) [certain firearm offenses], (D) [miscellaneous crimes, e.g., espionage, sabotage, sedition, selective service violations] of this title, or any offense covered by section 1252(a)(2)(A)(ii) of this title [conviction of two or more crimes involving moral turpitude] for which both predicate offenses are covered by section 1251(a)(2)(A)(i) of this title [classifying crimes of moral turpitude committed

within certain time periods after the date of entry as deportable offenses], upon release of the alien from incarceration, [and] shall deport the alien as expeditiously as possible. *Notwithstanding [other provisions of section 1252], the Attorney General shall not release such felon from custody.*

Only five months later, on September 30, 1996, Congress enacted the IIRIRA. The IIRIRA contained a mandatory detention provision, INA § 236(c), now codified as 8 U.S.C. § 1226(c) (West Supp.1998), which replaced AEDPA § 440(c). Congress provided, however, that the Attorney General could request deferment of the implementation of the IIRIRA mandatory detention provision for up to two years if there was insufficient detention space and INS personnel. *See* IIRIRA § 303(b)(2).[3] The Attorney General so notified Congress on October 9, 1996 and again in 1997 and, thus, implementation was deferred for two years. During the two-year deferment, the "Transition Period Custody Rules" ("TPCRs"), IIRIRA § 303(b)(3), were to be implemented instead of AEDPA § 440(c) or INA § 236(c). *See* IIRIRA § 303(b)(2). The TPCRs provided for bond hearings for some aliens removable for having committed certain crimes and gave the Immigration Court discretion to set bond if a lawfully admitted alien did not present a danger to persons or property and was likely to appear at future removal proceedings. *See* IIRIRA § 303(b)(3).

On October 9, 1998, the TPCRs expired and INA § 236(c), 8 U.S.C. § 1226(c) (West Supp.1998), became effective, providing for the mandatory detention of certain criminal aliens. As relevant here, the statute provides:

**(c) Detention of Criminal Aliens.**[4]

**(1) Custody.** The Attorney General shall take into custody any alien who—

(a) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title [including crimes involving controlled substances and controlled substance trafficking]

. . . . .

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (West Supp.1998). Detention is mandatory except in a limited circumstance, namely:

**(2) Release.** The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18, that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C. § 1226(c)(2) (West Supp.1998). As petitioner does not fall within the limited release provision of § 1226(c)(2), he is presently being detained without consideration of bond.

**B. *Subject Matter Jurisdiction***

█ Respondents argue, first, that INA § 236(e), 8 U.S.C. § 1226(e), has stripped this court of jurisdiction to review this

---

**3.** Section 303(b) of the IIRIRA is not codified but can be found in the historical notes to 8 U.S.C. § 1226 (West Supp.1998).

**4.** Aliens who are removable because they have committed certain criminal offenses enumerated in the INA have been referred to in the statute and throughout the case law as "criminal aliens."

petition. As amended by the IIRIRA, 8 U.S.C. § 1226(e) states that:

> The Attorney General's discretionary judgment regarding the application of this section [8 U.S.C. § 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section [8 U.S.C. § 1226] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e) (West Supp.1998). Respondents argue that this section forecloses judicial review over all immigration detention decisions of the Attorney General and, hence, the petition must be dismissed for lack of subject matter jurisdiction. This court does not agree.

Reviewing an analogous provision of the INA that purported to strip courts of jurisdiction to review deportation orders, the Court of Appeals for the Third Circuit held that, despite the broad jurisdiction-stripping language contained in 8 U.S.C. § 1252(g),[5] habeas corpus review under 28 U.S.C. § 2241 survived for claims by aliens who have been ordered deported based upon the commission of certain enumerated crimes. See Sandoval v. Reno, 166 F.3d 225, 238 (3d Cir.1999); see also Farquharson v. INS, 31 F.Supp.2d 403, 417 (D.N.J.1999). In Sandoval, the Third Circuit applied the doctrines of Felker v. Turpin, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) and Ex parte Yerger, 8 Wall. 85, 75 U.S. 85, 19 L.Ed. 332 (1868), and held that the district court retained jurisdiction under 28 U.S.C. § 2241 because there was not a clear statement of congressional intent to repeal habeas jurisdiction under 28 U.S.C. § 2241 and it could not be repealed by implication. See Sandoval, 166 F.3d at 231-38. Moreover, the Court continued, such a reading was nec-

essary to avoid difficult constitutional inquiries. Id. at 237-38.

The reasoning set forth in Sandoval applies with equal force to the question of whether 8 U.S.C. § 1226(e) stripped this court of jurisdiction under 28 U.S.C. § 2241 to review a challenge to petitioner's mandatory detention. As with 8 U.S.C. § 1252(g), 8 U.S.C. § 1226(e) does not contain a clear and express statement that habeas jurisdiction has been modified in any way. The language of 8 U.S.C. § 1226(e), moreover, is arguably less expansive than the language of 8 U.S.C. § 1252(g). Compare 8 U.S.C. § 1252(g) (West Supp.1998) ("*notwithstanding any other provision of law,* no court shall have jurisdiction to hear any cause or claim ....") (emphasis added); *with* 8 U.S.C. § 1226(e) (West Supp.1998) ("The Attorney General's discretionary judgment regarding the application of [8 U.S.C. § 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section ...."). Under Felker and Yerger, implied repeals of habeas jurisdiction are disfavored. See Felker, 518 U.S. at 660, 116 S.Ct. 2333; Ex parte Yerger, 75 U.S. at 105, 8 Wall. 85. As the Court stated in Sandoval, "courts should not lightly presume that a congressional enactment containing general language effects a repeal of a jurisdictional statute, and consequently, [ ] only a plain statement of congressional intent to remove a particular statutory grant of jurisdiction will suffice." Sandoval, 166 F.3d at 232. No such plain statement is set forth in 8 U.S.C. § 1226(e).

In addition, 8 U.S.C. § 1226(e) was enacted after Felker and, thus, Congress was presumably aware that if it wished to repeal habeas jurisdiction, it must do so explicitly. See Cannon v. University of Chicago, 441 U.S. 677, 699, 99 S.Ct. 1946, 60

---

**5.** 8 U.S.C. § 1252(g) (West Supp.1998) states that:

> Except as provided in this section [8 U.S.C. § 1252] and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

L.Ed.2d 560 (1979) (noting that it is appropriate and realistic to presume that Congress was thoroughly familiar with precedents from the Supreme Court and other federal courts and "that it expected its enactment to be interpreted in conformity with them").

Finally, this court will not read 8 U.S.C. § 1226(e) as repealing habeas review under 28 U.S.C. § 2241 because to do so would raise serious constitutional concerns. *See United States ex rel. Attorney General v. Delaware & Hudson Co.,* 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909) (stating that court should interpret statutes so as to avoid constitutional questions). The Suspension Clause of the Constitution states that: "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. 1, § 9, cl. 2. Legislation divesting the district courts of habeas jurisdiction has been held to be constitutional if a collateral remedy has been substituted which is "neither inadequate nor ineffective to test the legality of a person's detention." *Swain v. Pressley,* 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977). Here, under respondents' interpretation of 8 U.S.C. § 1226(e), no such alternative form of review is contemplated and judicial review is completely foreclosed. As the Third Circuit put it, "[a] statute removing all review of executive detention, [ ] would not provide an adequate and effective collateral remedy." *Sandoval,* 166 F.3d at 237.

Accordingly, this court finds that 8 U.S.C. § 1226(e) has not stripped this court of jurisdiction to review petitioner's claims under 28 U.S.C. § 2241.[6]

### C. *Scope of Review under 28 U.S.C. § 2241*

██ Having found that jurisdiction under 28 U.S.C. § 2241 is not foreclosed by 8

U.S.C. § 1226(e), the next question this court must address is whether the relief petitioner seeks falls within the limited scope of review available under 28 U.S.C. § 2241. Petitioner raises, first, a statutory claim that 8 U.S.C. § 1226(c) should not be applied retroactively to him; and, second, a constitutional claim that the mandatory provisions of the INA violate both the due process clause and the prohibition against excessive bail.

Both petitioner's statutory and constitutional claims fall within the purview of § 2241. By its terms, 28 U.S.C. § 2241 contemplates challenges to detention that are "in violation of the Constitution or laws or treaties of the United States." The Third Circuit has specifically addressed the bounds of judicial review available under § 2241 after the 1996 amendments. *See Sandoval,* 166 F.3d at 238. The Court found that, in addition to constitutional claims, certain statutory claims were also reviewable, and held that whether AEDPA § 440(d) should be retroactively applied was reviewable under § 2241. *Id.; see also Farquharson,* 31 F.Supp.2d at 413–14.

Separate and apart from his constitutional claim, petitioner's statutory claim that he is being detained without the possibility of bond or parole—or even a hearing—based on a section of a statute that should not have been applied to him can be reviewed on habeas because it affects a substantial right of petitioner. *See Henderson v. INS,* 157 F.3d 106, 122 (2d Cir.1998) (stating that statutory claims "affecting the substantial rights of aliens of the sort courts have secularly enforced" are reviewable on habeas) (cited with approval in *Sandoval,* 166 F.3d at 238). This is not to say that every claim regarding the detention provisions of 8 U.S.C. § 1226 is reviewable under § 2241. A claim, for

---

6. Having found that habeas review has survived 8 U.S.C. § 1226(e), this court need not reach petitioner's argument that judicial review is permissible here because, by its terms,

8 U.S.C. § 1226(e) forecloses judicial review only over "discretionary" decisions of the Attorney General. *See* Pet. Reply Br. at 4–5.

example, that the Attorney General should have exercised her discretion differently in determining that an alien was not a safety threat or a flight risk, thereby allowing release on bond or conditioned parole, may not be reviewable on habeas. However, petitioner's claim that the Attorney General erred in applying the mandatory detention provision to him—a provision that forecloses discretion or consideration of individual circumstances and has been found to be unconstitutional by the only two courts to have directly addressed the issue [7]—certainly affects a substantial right warranting habeas review.

### D. *Application of INA § 236(c) to Petitioner*

Turning to the merits of petitioner's claims, petitioner argues, first, that the mandatory detention provision of the INA, 8 U.S.C. § 1226(c), should not be retroactively applied to him because he was released from criminal custody, and Congress used the phrase "when . . . released," well before—more specifically, approximately thirteen years before—the IIRIRA provision became effective. Respondents assert that the mandatory detention provision is applicable to petitioner because Congress intended that the provision apply regardless of when the alien was convicted or when he or she was released from criminal custody—at least that is how respondents interpret the provision. Parenthetically, albeit somewhat scarily, respondents also believe that the mandatory detention provision permits them to do a "sweep" and serve notices of removal on those persons who have at any time over the years been convicted of drug offenses, mandatorily detaining them without a bond hearing throughout the concededly lengthy course of removal proceedings. Tr., March 30, 1999 at 22–27.

To this end, a directive issued on October 7, 1998, two days before the mandatory detention provision became effective, instructing INS Regional Directors to fill up 80% of INS bed space with such persons. *See* Mosley Cert., Exh. C at 2. That directive, it should be noted, states that those persons "must" be taken into custody "*upon their release* from criminal incarceration or custody," *id.* at 7 (emphasis added), undercutting respondents' position before this court.

■ In light of the "presumption against retroactive legislation[,]" the first step in determining whether a statute is to be applied retroactively is to evaluate whether there is an "express command" of Congress concerning the statute's temporal reach. *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Absent such a command, the court must apply the judicial default rules regarding retroactivity which include an evaluation of the statute's retroactive effect. *See id.* at 280, 114 S.Ct. 1483.

■ Here, the court need not proceed past the first step of the analysis because Congress has expressly provided that 8 U.S.C. § 1226(c) is to be applied only prospectively to aliens who were released from criminal custody after the statute took effect. *See Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 160–61 (3d Cir.1998) (noting that, under *Landgraf*, if Congress has expressly provided that the statute is or is not to be applied retroactively, the court must follow that express prescription, apply the statute accordingly, and the inquiry is done), *petition for cert. filed* Feb. 16, 1999 (No. 98–1319). Congress has explicitly set forth the effective date of the new detention provisions of the IIRIRA. *See* Pub.L. 104–208, Div. C, Ti-

---

**7.** *See Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998) (holding that 8 U.S.C. § 1226(c) is unconstitutional on its face as it violates the substantive and procedural due process rights of aliens); Van Eeton v. Beebe, CV–99–16–PA (D.Or. Feb. 23, 1999) (finding that § 1226(c) violated petitioner's due process rights and ordering a bail hearing or release) (minute sheet attached as Exh. A to Pet. Reply Br., noting that opinion is forthcoming).

tle III, § 303(b), Sept. 30, 1996, 110 Stat. 3009–586. In that provision, as noted above, Congress provided that implementation of the mandatory detention provision contained in 8 U.S.C. § 1226(c) could be delayed for up to two years upon the request of the Attorney General. *See* IIRIRA § 303(b)(2). Congress then provided that "[a]fter the end of such 1–year or 2–year periods, the provisions of [8 U.S.C. § 1226(c)] *shall apply to individuals released after such periods.*" *Id.* (emphasis added). IIRIRA § 303(b)(2) clearly sets forth the express command of Congress that the permanent mandatory detention provisions are to be applied to aliens who were released *after* the transitional rules expired. The transitional rules expired on October 9, 1998, and, therefore, by virtue of the express terms of the IIRIRA, 8 U.S.C. § 1226(c) does not apply to petitioner who was released before—and well before—October 9, 1998.[8] As Justice Scalia recently observed, "If to state this case is not to decide it, the law has departed further from the meaning of language than is appropriate for a government that is supposed to rule (and to be restrained) through the written word." *United States v. Rodriguez–Moreno*, —— U.S. ——, 119 S.Ct. 1239, 1246, —— L.Ed.2d —— (1999) (Scalia, J., dissenting).

To this court's knowledge, the only other courts to have directly addressed the applicability of 8 U.S.C. § 1226(c) have simi-

8. Even if Congress had not provided such an explicit command regarding prospectivity, it is fair to say that the language of 8 U.S.C. § 1226(c) itself illustrates that it is meant to apply only to aliens released after the statute became effective. Section 1226(c) states that "[t]he Attorney General shall take into custody [certain inadmissible and deportable aliens including aliens, like petitioner, who are inadmissible for having committed enumerated crimes] ... *when the alien is released* [ ] ....*" 8 U.S.C. § 1226(c)(1) (emphasis added). Applying the provision retroactively to aliens regardless of when they were released would render the phrase "when the alien is released" surplusage.

Courts have interpreted similar language in another mandatory detention provision as illustrating that the statute applied only prospectively. Specifically, AEDPA § 440(c), the mandatory detention provision that preceded 8 U.S.C. § 1226(c), provided that "[t]he Attorney General shall take into custody [aliens convicted of certain criminal offenses], *upon release of the alien from incarceration, ...*" AEDPA § 440(c), 8 U.S.C. § 1252(a)(2) (superseded) (emphasis added). Numerous courts have held that the language "upon release of the alien from incarceration" meant that the statute did not apply to aliens who were both convicted and released from incarceration before the statute was enacted. *See, e.g., Montero v. Cobb*, 937 F.Supp. 88, 95 (D.Mass.1996) (finding that petitioner was entitled to a bond hearing in part because AEDPA § 440(c) did not apply to aliens convicted and released prior to its enactment); *Villagomez v. Smith*, 1996 WL 622451 at *6 (W.D.Wa. July 31, 1996) (holding that the language of AEDPA § 440(c) supported the conclusion that it did not apply to aliens convicted and released prior to its enactment); *Grodzki v. Reno*, 950 F.Supp. 339, 342–43 (N.D.Ga.1996) (finding that the "upon release" language at least implies that INS custody commence within a reasonable time after release from incarceration and thus the statute did not apply to petitioner who had been released from incarceration eight years earlier); *DeMelo v. Cobb*, 936 F.Supp. 30, 36 (D.Mass.1996) (holding that AEDPA § 440(c) could not, by its language, apply to aliens who were convicted and released before the statute was enacted), *vacated*, 108 F.3d 328 (1st Cir.1997) (question mooted by passage of IIRIRA); *see also Pastor–Camarena v. Smith*, 977 F.Supp. 1415, 1417 (W.D.Wash.1997) (noting that "[t]he plain meaning of [the 'upon release' language of AEDPA § 440(c)] is that it applies immediately after release from incarceration, not to aliens released many years earlier").

Moreover, Congress was presumably aware that the "upon release" language of AEDPA § 440(c) was consistently being interpreted as limiting the applicability of the provision to aliens convicted and released after its enactment. Despite this, Congress replaced AEDPA § 440(c) with IIRIRA § 236(c) which again included release language. If Congress had intended to make the statute applicable to aliens regardless of when they were released, it could have easily included language to that effect. *See McCarthy v. Bronson*, 500 U.S. 136, 140, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991) (presuming that when Congress selected statutory language it was familiar with recently announced judicial opinions regarding the subject matter of the statute).

larly held that it does not apply to aliens who were released from custody prior to the effective date of the provision. *See Alves–Curras v. Fasano,* 98–cv–2295 (S.D.Cal. Feb. 22, 1999); *Alwaday v. Beebe,* 1999 WL 184028, —— F.Supp.2d —— (D.Or.1999). Both *Alves–Curras* and *Alwaday* held that based upon the plain language of the statute, as well as IIRIRA § 303(b)(2) which states that 8 U.S.C. § 1226(c) applies to individuals released after the two year transitional period, 8 U.S.C. § 1226(c) does not apply to aliens who were released in 1992 and 1991, respectively. *See Alves–Curras,* slip op. at 4; *Alwaday,* slip op. at 8.

Respondents point to *Richardson v. Reno,* 162 F.3d 1338 (11th Cir.1998), *petition for cert. filed* Feb. 23, 1999 (No. 98–1361), in support of their argument that 8 U.S.C. § 1226(c) is to be applied to aliens regardless of when they were released. Respondents assert that in *Richardson* the Court of Appeals for the Eleventh Circuit found that the mandatory detention provisions of the TPCRs and 8 U.S.C. § 1226(c) were applicable to the petitioner even though he had been released from criminal custody well before removal proceedings were initiated against him. *See* Resp. Br. at 9.

This court is unpersuaded. Although the court in *Richardson* did, indeed, state that the mandatory detention provisions directed detention of the petitioner, that was not the holding of *Richardson.* Indeed, that could not have been the holding given the Court's conclusion that, as a result of 8 U.S.C. § 1252(g), it had no jurisdiction to review either the petitioner's detention or removal, *see Richardson,* 162 F.3d at 1378–79, a conclusion flatly rejected by the Third Circuit in *Sandoval. See Sandoval,* 166 F.3d at 238. The Court's discussion in *Richardson* of the INS detention provisions is, therefore, dicta and rather cursory dicta at that. *Richardson,* 162 F.3d at 1348–52. Respondents concede that no case has adopted their position and held that 8 U.S.C.

§ 1226(c) applies to aliens who were released prior to its effective date. Tr., March 30, 1999 at 28–29.

Respondents also argue that 8 U.S.C. § 1226(c) must be interpreted as applying to aliens without regard to their release date because it calls for the mandatory detention of some aliens who have never been convicted of any criminal offense and, hence, would not have a release date. More specifically, respondents point this court to one of the four categories of aliens listed in 8 U.S.C. § 1226(c), *i.e.* aliens who are inadmissible or deportable because they have "engaged in"—but need not have been convicted of—terrorist activity. *See* 8 U.S.C. § 1226(c)(1)(D) (referring to aliens inadmissible or deportable under 8 U.S.C. § 1182(a)(3)(B) and 8 U.S.C. § 1227(a)(4)(B) respectively).

This court recognizes the apparent inconsistency created by Congress in enacting a statute which includes aliens who would never technically be "released" in a provision which mandates taking them into custody when they are released. While respondents' assertion that the statute applies to aliens irrespective of when or how they came into INS custody receives some support from this inconsistency, it impermissibly ignores, and, indeed, flatly contradicts numerous other eminently more explicit sections of the IIRIRA. This court cannot simply ignore the plain language of the statute which provides that an alien is to be taken into custody "when the alien is released," 8 U.S.C. § 1226(c), especially when it is clearly consistent with other sections, such as the one under which petitioner falls. More importantly, however, respondents' reading of the statute would flatly contradict IIRIRA § 303(b)(2) which explicitly states that 8 U.S.C. § 1226(c) "shall apply to individuals released after [the one or two year transitional period]." IIRIRA § 303(b)(2).

In light of the foregoing, this court concludes that 8 U.S.C. § 1226(c) does not apply to petitioner as he was convicted nineteen years before the statute took ef-

fect and released from criminal custody thirteen years before that date. Having found the statute to be inapplicable to petitioner, this court need not—at least in this case—reach the question of whether the IIRIRA's mandatory detention provisions are unconstitutional. *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (noting the prudential rule that federal courts should avoid reaching constitutional questions when the issue can be resolved on narrower grounds); *United States v. Clemons,* 843 F.2d 741, 749–50 (3d Cir.) (same), *cert. denied,* 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988). Given the burgeoning number of mandatory detention cases reaching the courts, however, this court has every confidence that it will be required to reach that question in the very near future.

### III. *Conclusion*

For the reasons stated, the petition for a writ of habeas corpus is granted. An Immigration Judge shall provide petitioner with an individualized bond hearing within ten days of this court's Order filed March 30, 1999, to determine whether, and under what conditions, petitioner may be released from custody pending the conclusion of the removal proceedings against him.