**Anton CURRI, Petitioner,**

**v.**

**Janet RENO, et al., Respondent.**

**Civil Action No. 99–4407 (AJL).**

United States District Court, D. New Jersey.

Feb. 23, 2000.

Frederick A. Organ, River Vale, NJ, for petitioner.

Robert J. Cleary, United States Attorney, Susan Handler–Menahem, Alice Loughran, Assistant United States Attorney, Newark, NJ, for respondents.

*OPINION*

LECHNER, District Judge.

This is an action brought by petitioner, Anton Curri ("Curri"), a detainee of the

Immigration and Naturalization Service (the "INS") in Elizabeth, New Jersey, against respondents, Attorney General Janet Reno, INS Commissioner Doris Meissner, INS District Director Andrea Quarantillo, Officer in charge of the United States Immigration & Naturalization Service Detention Center Lorelei Valverde, the INS, and the Department of Justice (collectively, the "Respondents"). Presently pending is a petition (the "Petition") of Curri for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241 ("Section 2241"), seeking parole from INS custody.[1]

For the reasons set forth below, the Petition is dismissed for lack of subject matter jurisdiction.

*Background*

On or about 7 August 1999, Curri, a native and citizen of Albania, arrived at John F. Kennedy International Airport ("JFK Airport") and attempted to gain admission into the United States with a fraudulent passport. *See* Petition at 1, Opp. Brief at 4. It appears Curri sought admission into the United States under the visa waiver pilot program, pursuant to 8 U.S.C. § 1187. The Petition alleges Curri "came to the United States because of credible fear of persecution and because of dangerous war time conditions." Petition at 1. Specifically, the Petition alleges: "The credible fear of persecution was due to political problems between the communist and democrats where his father and him [sic] were democrats looking to advance social and political goals of the people of Albania...." *Id.*

The Petition further alleges that in or about July 1999, Curri left Albania without any travel documentation, much more a valid passport and attempted to gain "refugee status" in a neighboring European country. *Id.* at 2. The Petition, moreover, alleges Curri sought "refugee status" in Italy and Belgium. *Id.* It appears, however, neither country would grant Curri "refugee status.[2]" *Id.* As a result, the Petition alleges Curri "determined that the only place that he could seek refuge was the United States which [he] believed was accepting refugees from both Kosovo and Albania." *Id.*

The Petition further alleges that in preparation for the journey to the United States, the parents of Curri purchased a fraudulent Slovenian passport so Curri would have a "travel document.[3]" *See id.* It appears Curri used the fraudulent passport to travel from Belgium to Paris, France where he proceeded to board a United States commercial airline carrier in

1. In support of the Petition, Curri submitted: the Petition, a supplement to the Petition, petitioner's reply brief (the "Reply Brief"), a supplement to the Reply Brief, and a "supplement to the file," attaching a letter, dated 16 September 1999 (the 16 September 1999 Letter), issued by the INS denying the request for parole by Curri.

   In opposition to the Petition, the Respondents submitted: the Government's habeas return and motion for dismissal for lack of subject matter jurisdiction (the "Opp. Brief").

2. The Petition does not set forth or explain the facts and/or circumstances surrounding the alleged attempt by Curri to gain admission into Italy and Belgium. By contrast, the Petition merely states in a conclusory fashion that Curri was not granted "refugee status" in either country. *See* Petition at 2.

3. The Petition alleges that due to the recent independence of Slovenia "many people from Albania ... were granted and do carry Albanian and Slovenian passports." Petition at 2. The Petition, however, acknowledges the passport that Curri presented upon arrival at JFK Airport was not valid: "[I]t is *not* denied that the Slovenian passport was *not* issued by the Slovenian government to Anton Curri." *Id.* (emphasis added).

   The Respondents, moreover, indicate that upon arrival at JFK Airport, Curri presented a "photo-substituted" passport to an immigration inspector. *See* Opp. Brief at 4. In addition, it appears pursuant to a sworn statement, Curri admitted the passport was not his and that he misrepresented himself to an immigration officer as the individual named on the passport upon his arrival at JFK Airport. *See* Record of Sworn Statement at 3, attached as Exhibit A to the Opp. Brief.

route to JFK Airport.[4] *Id.*

As mentioned, on or about 7 August 1999, Curri arrived at JFK Airport. *See id.* at 2 & Opp. Brief at 4. It appears, upon the arrival of Curri at JFK Airport, an immigration inspector determined Curri was in possession of a fraudulent passport. *See* Opp. Brief at 4. Curri subsequently indicated he desired to file political asylum in the United States and to that end, he declared he was a native citizen of Albania. *See* Petition at 2 & Opp. Brief at 4. It appears Curri was detained by the INS upon the determination by an INS officer that Curri did not have a valid passport. *See* Opp. Brief at 4.

It appears that Curri, through an interpreter, indicated in a sworn statement before an INS officer that he intended to reside in the United States "forever," he left Albania because he did not have a job, and that he obtained the fraudulent passport from an individual named Mon Ejlli.

> Q: How long do you plan to stay in the U.S.?
>
> A: I would like to stay here forever.
>
> * * * * * *
>
> Q: Why did you leave Albania to come to the U.S.?
>
> A: I have problems, the economy is bad I don't have a job. I was only able to live on my mother's pension.
>
> * * * * * *
>
> Q: What countries have you been to since you left Albania, and how long did you stay in each one?
>
> A: I went from Albania to Italy by boat I didn't stop in Italy, then to France for half a day and then the U.S.A. [sic] Guy named Mon Ejlli helped me with everything.
>
> * * * * * *
>
> Q: I show you Slovenian passport # AA907644 in the name of Kozek, Toni is this your legally issued passport?
>
> A: No someone gave it to me.
>
> Q: Where did you get it and how much did you pay for it?
>
> A: I paid $10,000 for the whole trip including the passport.
>
> Q: Did you present this Slovenian passport # AA907644 to a primary immigration inspector in an attempt to illegally enter the U.S.?
>
> A: yes I gave it to them and the officer noticed it wasn't legal.
>
> Q: Did you say anything to the Primary Officer upon inspection?
>
> A: Yes I pretended I was who was on the passport.

Record of Sworn Statement, attached as Exhibit A to the Opp. Brief.

The Petition further alleges no removal proceedings have been commenced against Curri: "No NTA [notice to appear] has been issued, therefore INS has no charges pending." *See* Petition at 3.[5]

Finally, it appears the Petition alternatively alleges because Curri was a minor at the time he arrived in the United States, it is "unlawful for the Immigration Service to hold him in detention." *See id.* at 2. In this regard, the Petition alleges Curri was born on 28 October 1981. *See* Facsimile copy of Birth Certificate, attached as Exhibit B to the Petition. It is undisputed, however, that Curri is no longer a minor.

4. Neither Curri nor the Respondents set forth which commercial airline carrier Curri boarded in Paris, France. The Petition, however, alleges Curri "boarded a United States airline in Paris, France, and traveled directly to JFK Airport." *See* Petition at 2.

5. It appears, therefore, the Petition alleges removal proceedings can only be commenced by the issuance of Form I–862 (Notice to Appear). *See* Petition at 3. The first sentence of the Petition, however, states: "[Curri] is in removal proceedings and is being detained by the [INS] at its detention center...." *See id.* at 1.

By contrast, the Respondents allege the INS instituted formal removal proceedings on or about 8 August 1999, as reflected by the issuance of Form I–863 (Notice of Referral to Immigration Judge). *See* Form I–863, attached as Exhibit B to the Opp. Brief.

*Discussion*

A. *Subject Matter Jurisdiction*

As a threshold matter, it must be determined whether subject matter jurisdiction exists over the Petition. Curri alleges he is entitled to review of a discretionary denial of his request for release and parole as a matter of statutory and constitutional right. *See generally* Petition at 3–8, Reply Brief at 1–6.[6]

It appears the instant Petition is focused solely on the recent congressional enactments pertaining to the apparent narrowing of subject matter jurisdiction as it relates to the federal immigration laws. In 1996, Congress enacted legislation which altered the federal immigration laws: the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996); and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"), Pub.L. No. 104–208, 100 Stat. 3009 (1996) (collectively, the "Acts"). It is undisputed the AEDPA and the IIRIRA went into effect before the detention of Curri.[7] *See* Petition.

A review of recent case law indicates that most of the judicial debate surrounding the Acts thus far has involved the extent to which judicial review of final orders of removal remains available following the AEDPA and the IIRIRA. In particular, courts have focused on the availability of review in the context of "transitional" removal cases. *See eg. Sandoval v. Reno,* 166 F.3d 225, 229 (3d Cir.1999).

Transitional removal cases are those case that were pending before 1 April 1997, the effective date of the IIRIRA. By contrast, all removal proceedings initiated by the INS after that date, such as the underlying action in the instant Petition, are subject to the permanent jurisdictional provisions imposed by the IIRIRA, now codified at 8 U.S.C. § 1252 *et seq.* ("Section 1252"). *See Sandoval,* 166 F.3d at 229 (discussing the transitional and permanent rules). *See also DeSousa v. Reno,* 190 F.3d 175, 180–81 (3d Cir.1999) (same).[8]

As mentioned, the instant Petition is governed by the permanent jurisdictional rules of the IIRIRA. While the Petition does implicate the jurisdictional provisions of Section 1252, it does not concern a final order of removal. Rather, the Petition seeks review of a purely discretionary decision by the INS regarding the temporary

6. In a conclusory fashion the Petition simply contends the court has jurisdiction to issue a writ of habeas corpus. *See* Petition at 3. In support of this contention, the Petition, in a "scatter gun" fashion, summarizes recent case law in an attempt to vaguely argue (albeit by analogy) that District Courts have subject matter jurisdiction over the discretionary decisions of the INS. *See id.* at 4–7. The Petition, however, fails to mention, much more address the relevant statutory provisions concerning the discretionary grant and/or denial of parole applicable to an alien such as Curri.

7. The Petition contains numerous contradictory statements which set forth Curri arrived in the United States on or about 7 August 1998 and 7 August 1999. *See eg.* Petition at 1–3. The Opp. Brief, however, states that Curri, in fact, arrived at JFK Airport on or about 7 August 1999. *See eg.* Opp. Brief at 4–5.

8. In *DeSousa,* the Circuit observed that while the Second Circuit recently held that habeas jurisdiction was not available in the INS context, *see Richardson v. Reno,* 180 F.3d 1311 (11th Cir.1999), the Second Circuit "predicated its opinion on post-IIRIRA law as [the petitioner] was placed in removal proceedings after IIRIRA's effective date." *See DeSousa,* 190 F.3d at 183 n. 6 (citing *Richardson,* 180 F.3d at 1318 n. 12). In this regard, the Circuit explained:

> Accordingly, Richardson distinguished Sandoval because Sandoval was a pre-IIRIRA case so that only the IIRIRA transitional provisions applied. Thus, the Richardson court explained that Sandoval did not involve the full, and extensive, revisions to the INA's judicial review scheme under INA § 242 as amended by IIRIRA. [DeSousa], like Sandoval, also involves only IIRIRA transitional rules. Therefore, we have no reason to consider whether we agree with Richardson.

*DeSousa,* 190 F.3d at 183 n. 6.

parole of Curri, and therefore, appears to be a matter of first impression in this court.

1. *The Governing Statutory Framework*

As mentioned, at issue in the instant action is whether a District Court has jurisdiction, pursuant to 28 U.S.C. § 2241, to review a discretionary decision by the INS to deny an alien parole. Specifically, the statutory provision at issue is Section 1252, the jurisdictional counter part to 8 U.S.C. § 1182 ("Section 1182"), among other sections.[9] Section 1182, *inter alia*, grants the Attorney General the discretion to temporarily parole any alien applying for admission into the United States. *See* 8 U.S.C. § 1182(d)(5)(A) & (B). Section 1252, in turn, delineates the jurisdictional limits of review of the discretionary powers granted under Section 1182.

Section 1182 provides in relevant part:

(5)(A) The Attorney General may ... in [her] discretion parole into the United States temporarily under such conditions as [she] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he [/she] was paroled and thereafter his [/her] case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

(B) The Attorney General may not parole into the United States an alien who is a refuge unless the Attorney General determines that compelling reasons in the public interest with respect to that particular alien require that the alien be paroled into the United States rather than be admitted as a refugee....

8 U.S.C. § 1182(d)(5)(A) & (B).

█ Section 1252, entitled "Judicial Review of Orders of Removal," however, provides *inter alia:*

(B) Denials of Discretionary Relief:

Notwithstanding any other provision of law, no court shall have jurisdiction to review:

"(ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General...."

8 U.S.C. § 1252(a)(2)(B)(ii).

█ As explained, Section 1252, while headed "Judicial Review of Orders of Removal," appears to have a broader scope than simply setting forth the jurisdictional limits of review of orders of removal. A title of a statute typically cannot limit the plain meaning of the text. *See Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998); *Almendarez-Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 1225, 140 L.Ed.2d 350 (1998). As a general rule of construction

[w]here the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most

9. Section 1252(a)(2)(B)(ii) provides that no court has jurisdiction to review any decision or action the Attorney General has discretion to make "under this subchapter" except for "the granting of relief under section 1158(a)." *See* 8 U.S.C. § 1252(a)(2)(B)(ii). It is undisputed that "this subchapter," which is subchapter II of Chapter 12 of Title 8, covers §§ 1151–1378, therefore Section 1182 is included within the jurisdictional reach of Section 1252. *See e.g. Van Dinh v. Reno, et al.,* 197 F.3d 427, 433 (10th Cir.1999) (noting that the jurisdictional bar of Section 1252 clearly precludes an action based upon an alleged violation of 8 U.S.C. § 1231). *See also Fedorca v. INS,* 1999 WL 104706 at 3 n. 4 (N.D.Ill. Feb. 25, 1999) (observing that Section 1252 precludes review of the provisions set forth in chapter 12 of Title 8); *Kamara v. Farquharson et al.,* 2 F.Supp.2d 81, 87 n. 5 (D.Mass.1998).

> general manner; to attempt to refer to each specific provision would often be ungainly as well as useless.... [T]he heading of a section cannot limit the plain meaning of the text. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

*Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528–29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947). *See Yeskey*, 524 U.S. at 212, 118 S.Ct. 1952 (citing *Baltimore & O.R. Co.*, 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947)); *Almendarez–Torres*, 118 S.Ct. at 1225 (same).

Upon review of Section 1252, it appears this section addresses several jurisdictional issues, including ones that are collateral to the review of a final order of deportation. *See eg.*, Section 1252(a)(2)(B)(i) (providing that "no court" may review certain of the Attorney General's discretionary grants of relief in, *inter alia*, requests for voluntary departure, cancellation of removal, and adjustment of status); Section 1252(e) (limiting jurisdiction to review exclusion orders, including habeas review and collateral constitutional challenges to the validity of the system); Section 1252(f) (providing limitations on injunctive relief available in any court other than the Supreme Court); Section 1252(g) (barring review in transitional cases of certain discretionary decisions of the Attorney General in any court and in any type of action).

It appears, therefore, Section 1252(a)(2)(B)(ii) is not limited in application only to review by the circuit courts of final orders of removal, and is applicable in the instant action. *See Reno v. American–Arab Anti–Discrimination Committee, et al.*, 525 U.S. 471, 119 S.Ct. 936, 945, 142 L.Ed.2d 940 ("*AAADC*") (observing that Section 1252(a)(2)(B) bars review of denials of discretionary relief authorized by various statutory provisions); *Van Dinh*, 197 F.3d at 430–33.

2. *Relevant Case Law*

The Supreme Court reviewed Section 1252(g), a similar jurisdictional provision found in the IIRIRA, and determined that Section 1252(g) precluded all jurisdictional review of the areas specifically addressed in that section. *See AAADC*, 119 S.Ct. at 940–45. Importantly, the Court held that Section 1252(g) completely eliminated the statutory jurisdiction of courts regarding the decisions of the INS pertaining to its authority to commence proceedings, adjudicate cases, and execute removal orders. *See id.* at 945. In so holding, the Court stated:

> There was good reason for Congress to focus special attention upon, and make special provision for, judicial review of the Attorney General's discrete acts of "commenc[ing] proceedings, adjudicat[ing] cases, and executing removal orders—which represents the initiation or prosecution of various stages in the deportation process. At each stage the Executive has discretion to abandon the endeavor, and at the time the IIRIRA was enacted the INS had been engaging in a regular practice (which had come to be known as "deferred action") of exercising that discretion for humanitarian reasons or simply for its own convenience."

*Id.* at 943.

In addition, the Court observed:

> Section 1252(g) seems clearly designed to give some measure of protection to "no deferred action" decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases of separate rounds of judicial intervention outside the streamlined process that Congress has designed.

*Id.*

Significantly, the Court also stated:

> Of course many provisions of [the] IIRIRA are aimed at protecting the Executive's discretion from the courts—in-

deed, that can fairly be said to be the theme of the legislation. *See eg.* Section 1252(a)(2)(A) (limiting review of any claim arising from the inspection of aliens arriving in the United States); **Section 1252(a)(2)(B) (barring review of denials of discretionary relief authorized by various statutory provisions);** Section 1252(a)(2)(C) (barring review of final orders against criminal aliens); Section 1252(b)(4)(D) (limiting review of asylum determinations for resident aliens)....

*Id.* at 945 (emphasis added).

It appears the Court determined that the jurisdiction of the lower courts, including habeas review pursuant to Section 2241, was repealed by the plain language of Section 1252(g) (albeit in the narrowly proscribed enumerated area of INS discretion). *See id.* at 943. *See also Richardson v. Reno,* 180 F.3d 1311, 1313–14 (11th Cir. 1999) (interpreting *AAADC* as only barring judicial review of challenges to a decision to commence proceedings, adjudicate cases or execute removal proceedings); *Botezatu v. INS, et al.,* 195 F.3d 311, 312 (7th Cir.1999); *Jacques v. Reno,* 73 F.Supp.2d 477, 479 (M.D.Pa.1999); *Alikhani v. Fasano, et al.,* 70 F.Supp.2d 1124, 1126 (S.D.Cal.1999)

Similarly, the unambiguous language of Section 1252(a)(2)(B)(ii) provides:

Notwithstanding any other provision of law, no court shall have jurisdiction to review:

"(ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General...."

8 U.S.C. § 1252(a)(2)(B)(ii). Because the Court in *AAADC* determined that Section 1252(g) eliminated judicial review, including habeas review pursuant to Section 2241, of certain discretionary decisions of the INS, it appears the unambiguous language of Section 1252(a)(2)(B)(ii) requires a similar conclusion. *See Chavez v. INS,* 55 F.Supp.2d 555, 557 (W.D.La.1999) (holding court lacked subject matter jurisdiction over challenges to discretionary decisions of the Attorney General); *Edoo v. Kaplinger,* 47 F.Supp.2d 769, 773 (W.D.La. 1999) (holding that because "review of discretionary claims has not historically been guaranteed, Congress can, and did, with the passage of AEDPA and IIRIRA, remove such claims from our review under [Section] 2241.").

Indeed, the Supreme Court cautioned that "if [deferred action and similar discretionary determinations] are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention...." *AAADC,* 119 S.Ct. at 943. By contrast, in the Petition, the discretionary decision not to grant Curri temporary parole is the sole basis for the requested judicial intervention—habeas review. *See* Petition at 1, 3, 5, & 7; Reply Brief at 5–7.

Prior to the decision in *AAADC,* this Circuit addressed various jurisdictional components of the IIRIRA and their effect upon habeas review. *See Sandoval,* 166 F.3d 225 (3d Cir.1999) (analyzing a "transitional rules" case). In *Sandoval,* the Circuit held that the absence of specific language repealing habeas jurisdiction under Section 2241 necessarily means District Courts retain jurisdiction to entertain habeas petitions. "In sum, because neither the AEDPA nor [the] IIRIRA contains a clear statement that Congress sought to eliminate habeas jurisdiction under [Section 2241], we conclude that [Section] 2241 survives the 1996 amendments." *Id.* at 236.

The decision in *Sandoval,* however, does not appear to be controlling on the issue of jurisdiction over the Petition for three reasons. Significantly, *Sandoval* was decided prior to *AAADC,* in which the Supreme Court held Section 1252(g), while not explicitly repealing habeas review, effectively barred *all* jurisdiction in three distinct areas of INS discretion. *AAADC,* 119 S.Ct. at 943. The broad statement that neither the AEDPA nor the IIRIRA contains a

clear statement as to the intent of Congress to bar habeas review, therefore, appears to be in conflict with *AAADC.*

In addition, because removal proceedings were instituted prior to the 1996 enactment of the IIRIRA, *Sandoval* is a "transitional rules" case. *See Sandoval,* 166 F.3d at 228.

Finally, at issue in *Sandoval* was whether a District Court retained habeas jurisdiction over a final order of deportation pursuant to AEDPA § 440(d) (Section 440(d)). Importantly, Section 440(d) essentially eliminated the discretion of the Attorney General to admit an otherwise deportable alien, if that alien was convicted of an enumerated crime. *See* AEDPA § 440(d). At issue in the instant Petition, however, is the unambiguous language of Section 1252(a)(2)(B)(ii), which excludes from judicial review certain discretionary decisions of the INS. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). *See also AAADC,* 119 S.Ct. at 945.

In *Catney v. INS,* 178 F.3d 190 (3d Cir.1999), despite holding that jurisdiction did not exist over a petition from a criminal alien for review of an order of deportation, the Circuit acknowledged its earlier holding in *Sandoval. See Catney,* 178 F.3d at 195 (observing that in light of *Sandoval* habeas review remains available to criminal aliens facing deportation). While noting *Sandoval* held "that habeas jurisdiction survived AEDPA's and IIRIRA's limitations on judicial review of certain deportation orders," the Circuit failed to cite to, much more address, *AAADC* which was decided one month after *Sandoval* and just three months prior to the decision in *Catney.*[10] *See Jacques v. Reno, et al.,* 73 F.Supp.2d 477, 480 (M.D.Pa. 1999); *Edwards v. Blackman,* 56 F.Supp.2d 508, 512 n. 5 (M.D.Pa.1999) (noting the lack of discussion of *AAADC* in *Catney* ).

Later that same year, the Circuit similarly determined, in light of *Sandoval,* that District Courts in this Circuit retain jurisdiction to review a habeas petition from deportable resident criminal aliens. *See DeSousa v. Reno, et al.,* 190 F.3d 175, 182–83 (3d Cir.1999). In *DeSousa,* however, the Circuit noted that the petition for habeas relief was not predicated on a governmental discretionary decision. *See id.* at 181 n. 5. Indeed, the habeas petition focused on the relevant statutory language barring the availability of a discretionary waiver of inadmissibility for certain criminal aliens. *See id.* Thus, the petitioner in *DeSousa* was challenging, *inter alia,* the constitutionality of a statute, not the exercise of governmental discretion.[11] *See id.*

**10.** The Circuit, however, generally acknowledged the recent influx of litigation surrounding the IIRIRA and the resultant narrowing of jurisdiction as follows:

> This is one of the tidal wave of cases seeking relief from orders of deportation brought by permanent resident aliens who have committed certain enumerated crimes. While many of these individuals are long-time residents with deep roots in American communities, they face virtually automatic deportation under recent amendments to the Immigration and Nationality Act, (the "INA") although in many cases the INS has only recently taken note of their long past criminal activities. While the Attorney General previously could exercise discretion to grant relief from such deportation orders, that discretion—as well as the right of judicial review of denials of such discretionary relief—has largely been eliminated by the recent amendments to the INA in the [AEDPA] and the [IIRIRA].

*Catney v. INS,* 178 F.3d at 191–92 (citations and footnotes omitted).

**11.** In *Velasquez v. Reno, et al.,* 37 F.Supp.2d 663 (D.N.J.1999), the court determined that jurisdiction, pursuant to Section 2241, was not stripped from the lower courts by the IIRIRA, and therefore, it could review a habeas petition challenging the retroactive application of a mandatory detention provision of the INA. *See id.* at 668–70. In so holding, the court stated that a claim "that the Attorney General should have exercised her discretion differently in determining that an alien was not a safety threat or a flight risk, thereby allowing release on bond or conditioned parole, may not be reviewable on habeas." *Id.* at 670.

Similarly, in the Petition, Curri is seeking review of the purely discretionary decision by

It appears *DeSousa,* like *Sandoval,* does not address whether a District Court retains habeas jurisdiction to review a purely discretionary determination by the INS. However, it appears in light of *AAADC,* jurisdiction over such decisions is expressly precluded by Section 1252(a)(2)(B)(ii). *See AAADC,* 119 S.Ct. at 944–45 (observing that ... "no deferred action decisions and similar discretionary determinations, ... if ... reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed.") (internal quotations omitted). *See also Richardson,* 180 F.3d at 1314 (stating that "the extensive revisions to the judicial review of removal proceedings enacted by IIRIRA and the AEDPA, viewed together, repealed [Section] 2241 jurisdiction over petitions challenging removal proceedings."); *Alikhani,* 70 F.Supp.2d at 1129 (observing that certain sections of the IIRIRA deprive courts of jurisdiction to review the exercise of discretion by the Attorney General).

Finally, it appears most courts which determined that the IIRIRA did not revoke jurisdiction under Section 2241, also posit that a repeal of habeas jurisdiction under the IIRIRA would be synonymous with a "suspension of a writ," in violation of the Suspension Clause. *See e.g. Sandoval,* 166 F.3d at 237 (citing U.S. Const. art. I, § 9, cl. 2). This argument misses the mark. Rather, a "constitutional dilemma" would only be implicated in the context of a suspension of a writ if the authority of the Supreme Court to issue a writ of habeas corpus, pursuant to 28 U.S.C. § 1651, ("Section 1651") was divested by the IIRIRA.[12] *See Felker v. Turpin,* 518 U.S. 651, 663, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (stating that "we have likewise recognized that judgments about the proper scope of the writ [of habeas corpus] are normally for Congress to make.") (internal quotations omitted). *See also Richardson,* 180 F.3d at 1315 (noting that the limitation on Section 2241 habeas jurisdiction by the IIRIRA is not unconstitutional); *Jacques,* 73 F.Supp.2d at 483 (observing that the Suspension Clause is only violated when the power to grant a writ of habeas corpus is divested form the Supreme Court); *Edwards,* 56 F.Supp.2d at 512–513; *Guy v. Reno,* 1999 WL 718554 at 4 (E.D.Pa. Sept. 2, 1999) (habeas review in Supreme Court presumably still available).

Because it appears Section 1252(a)(2)(B)(ii) repeals habeas jurisdiction, pursuant to Section 2241, for review of purely discretionary determinations made by the Attorney General, the Petition is dismissed for lack of subject matter jurisdiction.

*Conclusion*

For the reasons discussed, the Petition is dismissed for lack of subject matter jurisdiction. There is no probable cause to appeal.

the Attorney General to grant him temporary parole status pending the resolution of his application for asylum. *See generally* Petition.

12. Section 1651 provides in relevant part:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a).