Constance DION, Plaintiff, Appellee,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellant.

No. 87–1137.

United States Court of Appeals, First Circuit.

Submitted June 5, 1987.

Decided July 9, 1987.

John Aronson, Asst. Regional Counsel, Dept. of Health and Human Services, Richard V. Weibusch, U.S. Atty., and Gretchen Leah Witt, Asst. U.S. Atty., Concord, N.H., on brief for defendant, appellant.

Ellen L. Gordon, New Hampshire Legal Assistance, Manchester, N.H., on brief for plaintiff, appellee.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

The United States Secretary of Health and Human Services, defendant-appellant, appeals from a judgment in favor of Constance Dion, plaintiff-appellee, by the United States District Court for the District of New Hampshire. The district court reversed the Secretary's decision to offset a retroactive payment of Social Security Disability Insurance (SSDI) by the amount of Supplemental Security Income (SSI) for the same period, pursuant to 42 U.S.C. § 1320a–6 (1982). We affirm the district court.

### I.

■ A disabled person may qualify both for SSDI under Title II of the Social Security Act and for SSI under Title XVI of the Act. Eligibility for SSDI depends on the insured person's contributions and insured status, 42 U.S.C. § 423(a)(1), (c)(1) (1982); SSI provides a minimum income for disabled people based on need, 42 U.S.C. § 1382(a)(1), (c)(1) (1982).

In determining a person's eligibility for SSI, the agency considers her resources and any income received during the relevant quarter. Such income may include any SSDI benefits received during that period. Prior to the adoption of section 1320a–6, individuals whose SSDI checks were delayed for any reason would not have their SSDI income considered when the agency determined their eligibility for SSI payments for that period. Thus, when a person finally received a retroactive SSDI check, she could, in some cases, have received full benefits for both programs for the same period.

On June 9, 1980, Congress adopted Pub.L. 96–265, § 501, 94 Stat. 469 (1980), codified at 42 U.S.C. § 1320a–6 (1982).[1] The new statute provided that a person's entitlement under the two programs was to be considered as a totality: a retroactive SSDI check would be offset by the amount of SSI that would not have been paid if the SSDI benefits had been paid when they were regularly due.

The issue presented by the present case concerns the retrospective application of section 1320a–6 to SSDI claims that were filed and would have been regularly paid prior to the effective date of the statute but whose actual payment was delayed until after that date. In accordance with Pub.L. 96–265, § 501(d), 94 Stat. at 470, the new offset provision did not go into effect immediately upon its passage in June, 1980. Rather, the offset provision was declared to be applicable to cases in which "entitlement for [SSDI] is determined on or after [July 1, 1981]." The parties to this appeal dispute the meaning of this provision.

### II.

The facts material to this appeal are undisputed; the procedural history, though complicated, bears recounting in some detail. Dion originally applied for both SSI and SSDI benefits in June, 1977. Her applications were denied both initially and upon reconsideration. She did not appeal this denial. She reapplied for both programs in November, 1979. Due to administrative error, involving the inability of the agency to locate Dion's folder, her application was not completed until August, 1980. She was, however, granted "protective filing"; her application was considered filed as of November, 1979. In October, 1980, Dion was denied both SSDI and SSI benefits. In January, 1981, the agency reconsidered her SSI application and again denied it. In June, 1981, Dion was informed that her SSDI claim was also denied upon reconsideration, although the determination had actually been made more than four months earlier.[2]

In February, 1982, an Administrative Law Judge (ALJ) ruled that Dion had been disabled as of May 5, 1977. The ALJ reopened Dion's June, 1977, applications for SSI and SSDI; he ruled that Dion was

---

1. The statute was amended again in July, 1984, see 42 U.S.C. § 1320a–6 (Supp. III 1985), but this amendment is not relevant to the present case.

2. These facts are taken from *Dion v. Secretary of Health and Human Services*, Civ. No. 83–442–D (D.N.H. April 25, 1984), slip op. at 2 [Available on WESTLAW, DCT database].

entitled to receive both benefits based on the 1977 applications. In April, 1982, Dion began receiving her regular monthly SSDI check; she was ineligible for SSI benefits because of this SSDI income. On July 27, 1982, Dion received a retroactive check for benefits improperly denied between 1977 and 1982. The check included: (1) full SSDI benefits from November, 1977, through November, 1979; (2) SSDI benefits offset by the concurrent SSI benefits from November, 1979, through February, 1982; and (3) full SSI benefits from November, 1979, through February, 1982. The check did not include SSI benefits from June, 1977, through November, 1979, despite the ALJ's decision.

In May, 1983, the Appeals Council reopened the ALJ decision and denied Dion SSI benefits from June, 1977, through November, 1979. In April, 1984, the district court ruled that the Appeals Council had illegally reopened Dion's case. The court ordered payment of SSI benefits from June, 1977, through November, 1979. *See Dion v. Secretary of Health and Human Services,* Civ. No. 83–442–D, slip op. (D.N.H. April 25, 1984). Dion had also sought judicial review of the offset of her SSDI benefits from November, 1979, through February, 1982, by her SSI benefits for the same period. The court, however, ruled that Dion would have to exhaust her administrative remedies on this issue before it could be properly presented for judicial review.

Having exhausted her administrative remedies, Dion returned to district court. The court, following its earlier decision in *Hey v. Schweiker,* No. C. 81–341–L, slip op. (D.N.H. October 5, 1982), ruled that the offset had been improperly applied. The court held that the law governing Dion's case is the law that was in effect at the time she "would have begun receiving benefits had the [Social Security Administration] ruled correctly initially." The date at which Dion would have begun receiving the benefits at issue was November, 1979. Accordingly, the court ruled that section 1320a–6, which became effective in July, 1981, did not apply to the retroactive SSDI

payment. The Secretary appeals this decision.

### III.

The issue in this case concerns the retrospective effect of section 1320a–6 on claims filed before the statute went into effect. We begin our analysis, therefore, with the general principle governing the retrospective effect of statutes:

> [T]he first rule of construction is that legislation must be considered as addressed to the future, not to the past.... [A] retrospective operation will not be given to a statute which interferes with antecedent rights or by which human action is regulated, unless such be "the unequivocal and inflexible import of the terms and manifest intention of the legislature."

*Union Pacific R.R. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913) (citations omitted). *Accord Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964). In order to attribute retrospective effect to a statute, "there must be found expression of the legislative will in terms so plain as to admit of no doubt that such was the intention." *Elliot v. Volpe,* 328 F.Supp. 831, 835 (D.Mass.1971).

Section 501(d) of Pub.L. 96–265, 94 Stat. at 470, states that the offset provision "shall be applicable in the case of payment of monthly insurance benefits under title II of the Social Security Act entitlement for which is determined on or after the first day of the thirteenth month which begins after the date of the enactment of this Act." The conflict over the meaning of this provision arises in cases, such as the present one, that were initiated before July 1, 1981, but that were not finally adjudicated by the agency and the courts until after that date.

In the phrase, "entitlement for which is determined on or after [July 1, 1981]," the Secretary stresses the word "determined" and interprets that word as synonymous with "finally adjudicated." The Secretary claims that the law controlling these cases is the law in effect on the final "adjudica-

tion date"; the Secretary defines "final adjudication" as the date of the signing of the award authorization by the claims authorizer. According to the Secretary, this date "unambiguously fixes the time when such a determination has been subject to final review" by him.

We do not, however, find any language in the statute that would indicate that "determined" refers to the "final adjudication" rather than to an earlier stage of the proceedings. Moreover, at least at one point, the Secretary's own regulations define "determination" as "the initial determination or the reconsidered determination," 20 C.F.R. § 404.901 (1986), rather than the exhaustion of all administrative and judicial avenues. Finally, there is nothing in the offset provision that mentions the signing of the award authorization.

■ The district court, following its decision in *Hey*, interpreted the word "determination" in relation to "entitlement." This interpretation views the controlling date as that on which the claimant's eligibility was initially determined, not the time of final adjudication. Thus, under this interpretation, section 501(d) means that the offset provision does not apply to individuals whose *determinations as to entitlement to benefits (including erroneous determinations of noneligibility) were made before July 1, 1981*. Accordingly, the district court concluded that it was "compelled to award benefits to [Dion] without offset simply because the statute in question (§ 1320a–6) was not in effect when [she] was determined to be eligible."[3]

We agree with the district court's reading of the statute in light of the general rule, cited above, against finding retrospectivity in statutes absent an unambiguous declaration to the contrary. In addition, there are two other considerations we find persuasive. First, the thirteen-month postponement by Congress of the effective date of the statute shows a clear intent to obviate any retrospective application. The Secretary argues that the postponement shows, on the contrary, that Congress intended to *limit* the protection against retrospective application to claims finally adjudicated before July 1, 1981. We cannot accept this view; the legislative history, as well as logic, militate against it. The Senate Committee report clearly states that "[t]he committee expects that the department will ensure that applicants are made aware [the offset] is required by law *at the time they file their claims for benefits*." S.Rep. No. 96–408, 96th Cong., 2d Sess. 78, *reprinted in* 1980 U.S.Code Cong. & Ad. News, 1277, 1356 (emphasis added). The Department could not have made Dion "aware" of the offset provision at the time of her application because the provision did not yet exist. The clear statement in the legislative history and Congress' postponement of the effective date show a manifest intent to bar any retrospective application. We can carry out this intent by interpreting the word "determined" in section 501(d) with reference to the date of initial determination in respect to "entitlement" rather than to the date of "final adjudication."

Secondly, the Secretary's interpretation would lead to an unacceptable disparity between claims based on the luck of a

3. Both parties cite the only reported case dealing, at least indirectly, with the issue presented here. In *Fagner v. Heckler*, 779 F.2d 541, 543 (9th Cir.1985), the court rejected the Secretary's view that the controlling date is that of the signing of the award certificate. It found that the claimant was "entitled" to her benefits prior to July, 1981, because an unappealed ALJ decision had issued in June, 1981. *Fagner*, however, does not directly address the issue presented here and may be cited both for and against the district court's ruling. When the *Fagner* court considered the date of the ALJ decision as the relevant date, it might, on the one hand, have considered that date to be definitive; on the other hand, it might have stopped its analysis at

that point because that date was already within the July, 1981, deadline. Thus, it had no need to decide whether an earlier "entitlement" date might also suffice to escape the provisions of § 1320a–6. The *Fagner* court's stress on the word, "entitlement," suggests that the logic of its opinion would support the district court here. The court cited a dictionary definition of "entitlement" as "to give right or legal title to, qualify (one) for something, furnish with proper grounds for something." *Id.* (citations omitted). We note that "entitlement" for disability benefits begins with the first month covered by the application in which the eligibility requirements are met. 20 C.F.R. § 404.316(a) (1986).

particular applicant in pushing her claim through the sometimes frustratingly slow administrative and judicial process. This factor played a role in the district court's reasoning in *Hey,* slip op. at 3. The present case further illustrates the arbitrary results that could ensue. Dion originally applied for benefits in June, 1977. She reapplied in November, 1979. Due to the agency's error in misplacing her folder, her application was not processed until August, 1980. While the "protective filing" meant that her application was constructively viewed as completed in November, 1979, the delay pushed the ultimate adjudication of her claim much closer to the "effective date" of the statute. If not for the agency's inefficiency, her claim might have been resolved much earlier. In addition, Dion was not informed of the denial of her request for reconsideration of her SSDI claim until June, 1981. Finally, we note that the ALJ took the extra step of reopening her 1977 application on the grounds that it had been erroneously denied. Thus, Dion struggled for nearly five years to obtain administrative recognition of a disability that began in 1977. Without a strong, explicit legislative statement to the contrary, simple justice dictates that she should not suffer for the agency's delays and errors in handling her case.

The Secretary argues that we should follow his interpretation of the statute on the general principle that courts should defer to an agency's interpretation when that agency is charged by the statute with its administration. We agree with the principle as a general rule; there are limits, however, to this deference. The "courts are the final authorities on issues of statutory construction." *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission,* 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968). The deference due an agency's interpretation depends, in the first instance, on whether the matter is more properly viewed as within the agency's expertise or, on the contrary, as a

clearly legal issue that courts are better equipped to handle. *See McCuin v. Secretary of Health and Human Services,* 817 F.2d 161, 167–168 (1st Cir.1987). In addition, where the agency's interpretation would conflict with the congressional policy underlying the statute, or where there are "compelling indications" that the agency is wrong, courts should apply their own judgment. *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 94–95, 94 S.Ct. 334, 339–340, 38 L.Ed.2d 287 (1973).

This case presents a clearly legal issue, concerning the retrospective application of a statute, which is covered by a Congressional policy both implicit in the statute and explicit in the legislative history. Under these circumstances, we do not find it inappropriate to exercise our own interpretive reasoning in reading the statute.[4]

*Affirmed.*

---

**4.** Like the district court, we have decided this case on the grounds that § 1320a–6 should not be applied retrospectively; thus, like the district court, we do not reach the issue of whether

§ 1320a–6 applies generally to concurrent SSDI and SSI benefits. *Cf., e.g., Detson v. Schweiker,* 788 F.2d 372 (6th Cir.1986).