Alireza ALIKHANI, Petitioner,

v.

Adele FASANO, San Diego District Director, Immigration and Naturalization Service; and Janet Reno, Attorney General, Respondents.

No. 99–CV–538K(AJB).

United States District Court,
S.D. California.

July 19, 1999.

Gina L. Darvas, Darvas Chaula and Aguirre, San Diego, CA, for Plaintiff.

U.S. Attorney CV, U.S. Attorney's Office, Civil Division, San Diego, CA, for Defendants.

## ORDER DENYING WRIT OF HABEAS CORPUS

KEEP, District Judge.

On March 19, 1999 petitioner Alireza Alikhani, through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). Petitioner is a native and citizen of Iran who became a lawful permanent resident of the United States on October 2, 1998. On April 26, 1999, respondents filed a return in opposition to the petition. Respondents filed a notice of lodgment regarding subject matter jurisdiction on May 18, 1999. In addition to a traverse, petitioner moved to strike the lodgment, or in the alternative, to file a supplemental brief in response. Petitioner's alternative request was granted and petitioner filed a supplemental brief on June 11, 1999. On June 18, 1999, petitioner requested oral argument.

### I. *Background*

Petitioner is currently being held by INS without bond pursuant to the mandatory detention provision codified at 8 U.S.C. § 1226(c). On April 22, 1997, petitioner pled guilty and was convicted of possession of methamphetamine for sale, an enhancement for having a firearm in the house, and of a charge of possession of phone cloning equipment. *See* Petition at ¶ 10. Petitioner was given a suspended sentence, and as a condition of his probation, he was sent to work furlough. *See id.* at ¶ 13. On October 20, 1997, petitioner was released from the California authorities directly to INS and charged with deportability on the grounds of the aggravated felony. INS released petitioner from custody on October 21, 1997, when petitioner posted a $5,000 bond.

Petitioner was arrested for a probation violation on September 18 or 19, 1998. Pursuant to a detainer filed by INS, the

detaining authorities transferred custody of petitioner directly to the INS on October 21, 1998. *See* Respondents' Exhibits 25–27. Petitioner has remained in custody without bond.

On December 18, 1998, an immigration judge ordered petitioner removed from the United States to Cyprus, or in the alternative, to Iran. Petitioner's appeal to the Board of Immigration Appeals is still pending. The immigration judge denied petitioner's request for a change in his custody status on March 23, 1999.

## II. *Discussion*

### A. Subject Matter Jurisdiction

■ Prior to reaching the merits of petitioner's claims, this court must assess whether this court has subject matter jurisdiction over petitioner's writ. Absent intervening law, this court has jurisdiction pursuant to 28 U.S.C. § 2241. Respondents' and petitioner's respective positions require this court to review a number of provisions appearing in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 ("IIRIRA"). Accordingly, this court will turn to an examination of 8 U.S.C. § 1252 and 8 U.S.C. § 1226.

### 1. Section 1252(g)

It is clear to this court that 8 U.S.C. § 1252(g) does not bar this court from hearing the § 2241 petition. Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter. 8 U.S.C. § 1252(g).

In *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999), the Supreme Court held that 8 U.S.C. § 1252(g) should be read narrowly so as to apply only to "three discrete actions" that the Attorney General may take, namely the Attorney General's decision "to commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 943.

The challenge to the mandatory detention provision in this case does not involve a decision to "commence proceedings," to "adjudicate cases," or to "execute" a removal order. Rather, petitioner's claims are unaffected by 1252(g) because they "constitute 'general collateral challenges to unconstitutional practices and policies used by the agency.' " *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999) (quoting in part *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991)). Petitioner's challenge to the mandatory detention law is therefore distinct from a petition that seeks review of the bond determination itself. *Cf. Walters*, 145 F.3d at 1052 n. 15 (analogizing to review of social security cases). In sum, a challenge to the constitutionality of confinement pending deportation does not address any discretionary action by the Attorney General, and "does not implicate the three categories of unreviewable decisions specified in § 1252(g)." *Diaz–Zaldierna v. Fasano*, 43 F.Supp.2d 1114, 1117 (S.D.Cal.1999). Accordingly, this court finds that § 1252(g) does not deprive it of jurisdiction to hear petitioner's collateral challenges to the INS' implementation of federal law.

### 2. Section 1252(b) and Section 1252(b)(9)

Respondents argue that the broad language contained in § 1252(b) divests this court of jurisdiction over any challenge to any aspect of the deportation process. This court, however, finds that § 1252(b) does not divest this court of jurisdiction over petitioner's collateral challenges to his detention. Section 1252(b) applies to a "review of an order of removal" under § 1252(a)(1). 8 U.S.C. § 1252(b). The

clear language of Section 1252(b)(1) demonstrates that it applies to final orders of removal, stating that petitions "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). District courts do not have jurisdiction over final removal orders. Rather, challenges to final removal orders are to be filed with the court of appeals for the judicial circuit "in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2).

Respondents rely on § 1252(b)(9), a section that has been referred to as an "unmistakable zipper clause," i.e. that § 1252(b)(9) regulates jurisdiction where no other specific provision applies. *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999). Respondents maintain that 8 U.S.C. § 1252(b)(9) repeals this court's jurisdiction. Section 1252(b)(9) states that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from *any action taken or proceeding brought to remove an alien* from the United States under this subchapter *shall be available only in judicial review of a final order under this section.* 8 U.S.C. § 1252(b)(9) (emphasis added).

Although the Supreme Court reviewed the scope of § 1252(g) in *American–Arab Anti–Discrimination Committee,* the Supreme Court also discussed § 1252(b)(9) in that case. As described above, the Supreme Court held that § 1252(g) was not susceptible to a broad reading that would allow it to be applied to all deportation claims. In comparing the narrow scope of § 1252(g) to § 1252(b)(9), the Supreme Court indicated that § 1252(b)(9) "covers the universe of deportation claims." *American–Arab Anti–Discrimination Committee,* 119 S.Ct. at 943. In essence, respondents urge this court to expand the dicta of the Supreme Court so as to apply § 1252(b) and § 1252(b)(9) to an alien's

habeas petition regardless of what aspect of the deportation proceeding petitioner challenges.

This court finds that the § 1252(b)(9) "zipper clause" does not deprive this court of jurisdiction over petitioner's claims regarding his detention. Section 1252(b)(9) only applies to final orders of deportation. In arguing that § 1252(b)(9) applies to any aspect of the deportation process, respondents conflate petitions addressing the final orders of removal, addressed by § 1252, with petitions addressing procedures unrelated to a final removal order . such as this one, predicated on § 1226. Petitioner is not challenging the removal decision itself, but rather his detention at this time. Oftentimes, habeas petitions will be brought long before a final order of removal is entered because an individual believes that he or she is being unconstitutionally detained.

This court finds that § 1252(b)(9) is not intended to cover all challenges by an alien to all aspects of the treatment he or she receives during the deportation process. Although *American–Arab* indicates that § 1252(b)(9) is a zipper clause, there is no support in the statute for expanding § 1252(b)(9) beyond the scope of removal/deportation orders into the area of an alien's detention. The language of § 1252(b)(9) itself does not indicate that it applies to all claims by aliens including detention. Rather, § 1252(b)(9) specifically discusses actions or proceedings brought "to remove an alien." The language of § 1252(b)(9) therefore appears to apply to removal proceedings, and not to other issues such as detention.

The court's interpretation is consistent with the statutory scheme. Section § 1252(b)(9) appears under the heading entitled "Judicial review of *orders of removal,*" (emphasis added). The heading under which a section appears aids a court in determining how to apply a certain section. *See Almendarez–Torres v. U.S.,* 523 U.S. 224, 118 S.Ct. 1219, 1226, 140 L.Ed.2d 350 (1998). Section 1226 of the statute, in

contrast, explicitly addresses "Apprehension and detention of aliens." The petitioner in this case is challenging his detention, not a final order of removal. The petition would appear to be governed by § 1226 by the clear language of the statute. To read § 1252(b)(9) as covering all claims, including claims regarding an alien's detention, would render § 1226 superfluous. Such an interpretation is to be avoided. *See, e.g., Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979).

Were respondents' position adopted, an alien in petitioner's position would be left without recourse. Petitioner is challenging his detention. If respondents are correct that § 1252(b)(9) applies to all claims, petitioner would be barred from challenging an allegedly unconstitutional detention because no final order regarding his removal has been issued. To read § 1252(b)(9) as revoking this court's jurisdiction to review constitutional challenges to collateral aspects of the deportation procedure, and to consequently immunize INS' implementation of federal immigration laws from due process challenges, "would raise difficult constitutional issues." *Walters v. Reno,* 145 F.3d 1032, 1052 (9th Cir.1998) (quoting *Catholic Social Services, Inc. v. Reno,* 134 F.3d 921, 927 (9th Cir.1997)). It is well-established that "when constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence." *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (quoting in part *Weinberger v. Salfi,* 422 U.S. 749, 762, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). Instead, statutes should be interpreted to preserve the authority of courts to consider constitutional claims when possible. *See Walters,* 145 F.3d at 1052 (quoting *American–Arab Anti–Discrimination Committee v. Reno,* 119 F.3d 1367, 1372 (9th Cir.1997))

(overruled on other grounds, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)).

Repeal of habeas jurisdiction requires a more explicit statement from Congress than § 1252(b)(9), which does not mention detention proceedings at all. *See, e.g., Felker v. Turpin,* 518 U.S. 651, 660–665, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (implied repeals of habeas jurisdiction are disfavored). Article I, Section 9, Clause 2 of the Constitution prohibits suspension of the writ of habeas corpus except in extraordinary circumstances. Respondents' position would require this court to examine whether the writ is being suspended and/or whether this particular suspension is permissible in light of the Suspension Clause. As the First Circuit noted, a habeas challenge to detention by the executive is at the "historical core of the Suspension Clause." *Goncalves v. Reno,* 144 F.3d 110, 123 (1st Cir.1998) (citing, *inter alia, Felker* ), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999). In light of the court's interpretation as outlined above, however, it is not necessary to make such determinations. *See Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir. 1999). Accordingly, this court holds that § 1252(b)(9) does not deprive this court of jurisdiction to hear petitioner's claims regarding his detention when a final removal order has not yet been issued.

### 3. Section 1226(e)

Respondents also argue that § 1226(e) deprives this court of jurisdiction. This court rejects that argument. Section 1226(e) states the following:

> The Attorney General's *discretionary judgment* regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole. (emphasis added).

The language of the statute clearly refers to discretionary acts taken by the Attorney General. As the Supreme Court noted,

many provisions of IIRIRA "are aimed at protecting the Executive's discretion from the courts . . . ." *American–Arab Anti–Discrimination Committee,* 119 S.Ct. at 945. To interpret § 1226(e) as affecting this court's jurisdiction to hear a constitutional challenge to a statute which requires mandatory detention reads the section too broadly. Section 2241 specifically allows a court jurisdiction to ensure that individuals are not in custody in violation of the laws of the United States. *See* 28 U.S.C. § 2241(c)(3). Section 1226(e) simply deprives a court of jurisdiction to review the Attorney General's exercise of the discretion she has to release or detain an alien. *See* 8 U.S.C. § 1226(e).

In this case, a discretionary decision of the Attorney General is not at issue. Rather than challenge a discretionary decision regarding bond, for example, petitioner in this case challenges the constitutionality of a non-discretionary law that calls for mandatory detention of all aliens who have committed certain felonies. There is no indication that § 1226(e) is intended to deprive this court of jurisdiction over constitutional challenges to laws governing an alien's detention. As the Seventh Circuit stated, "[s]ection 1226(e) likewise deals with challenges to operational decisions, rather than to the legislation establishing the framework for those decisions." *Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir.1999).

A review of other sections of § 1226 reveal the type of discretionary decisions contemplated by § 1226(e). Section 1226(a), for example, states that the Attorney General "may continue to detain" an arrested alien, or "may release" an arrested alien on bond or on conditional parole if that alien is not made ineligible by § 1226(c). Pursuant to § 1226(b), the Attorney General "may revoke a bond or parole." Section 1226(c)(2) also contains some discretionary considerations such as

whether the alien is a witness or individual cooperating with a government investigation. *See* 8 U.S.C. § 1226(c)(2). Although § 1226(e) could affect jurisdiction over discretionary actions, a discretionary decision is not at issue in this petition.

Because this case does not involve the Attorney General's exercise of "discretionary judgment" as delineated in § 1226(e), this court finds § 1226(e) is inapplicable to the present petition. *See Velasquez v. Reno,* 37 F.Supp.2d 663, 668 (D.N.J.1999) (holding that the court has jurisdiction to review similar claims pursuant to § 2241). Accordingly, this court retains its habeas jurisdiction pursuant to § 2241.

## B. Exhaustion of Administrative Remedies

The government argues that petitioner [1] has not exhausted his administrative remedies because he has an appeal of the detention determination pending with the Board of Immigration Appeals ("BIA"). In support of its argument, the government notes that administrative exhaustion requirements arise from either explicit statutory language or from the administrative scheme providing for agency relief. *See McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). While the government broadly asserts that "the governing regulations provide for review of administrative review," the government fails to indicate what statutory or administrative provisions mandate exhaustion in the present circumstances. *See* Government's Brief at 5.

Where a statute does not explicitly require administrative exhaustion, the decision of whether to require exhaustion is left to judicial discretion. *See Wang v. Reno,* 81 F.3d 808, 814 (9th Cir.1996). In *Wang,* the Ninth Circuit held that due process challenges to INS procedures do not require administrative exhaustion be-

---

1. The government brief refers to someone named "Aurin" as the petitioner. The court will assume that the government intends to refer to the petitioner in the present matter, Mr. Alikhani.

cause the constitutional challenge to INS procedure does not implicate a review of a deportation order. *See id.* Additionally, where there is no explicit requirement of exhaustion prior to seeking judicial review, then intra-agency review of a decision is optional. *See Young v. Reno,* 114 F.3d 879, 882 (9th Cir.1997).

In the present case, there does not appear to be an explicit provision which requires administrative review prior to the filing of a judicial action. Additionally, like in *Wang,* a review of the detention order here does not implicate the deportation order. A review of petitioner's detention pending deportation, regardless of the outcome, is entirely consistent with the deportation order. Thus, the court finds that petitioner is not required to exhaust his administrative remedies prior to seeking judicial review of his mandatory detention. *See e.g., Tam v. INS,* 14 F.Supp.2d 1184, 1189 (E.D.Cal.1998); *Morisath v. Smith,* 988 F.Supp. 1333, 1340 (W.D.Wash., 1997).

### C. Scope of 8 U.S.C. 1226(c)

Before turning to the issue of whether 8 U.S.C. 1226(c) violates various provisions of the Constitution, the court must determine the scope of § 1226(c)'s application. Section 1226(c)(1) reads, in relevant part:

The Attorney General shall take into custody any alien who [commits an enumerated felony] *when the alien is released,* without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense. (emphasis added).

The question, then, is whether § 1226(c) applies retroactively to persons who were released from custody prior to October 10, 1998, the effective date of the statute's mandatory detention provisions. In examining whether § 1226(c) applies to persons released before the effective date of the statute's mandatory detention provi-

sions, this court notes that there is a general presumption that statutes operate prospectively rather than retroactively. *See Landgraf v. USI Film Products,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In determining whether the legislation applies retroactively, the court looks first to whether there is an express statement regarding the proper temporal reach of the statute. *See id.* at 280, 114 S.Ct. 1483. If the statute contains express language regarding the temporal scope of the statute, the court need not "resort to judicial default rules" in determining the scope of the statute. *Id.; see also Mathews v. Kidder, Peabody & Co., Inc.,* 161 F.3d 156, 160–1 (3rd Cir.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 1460, 143 L.Ed.2d 546 (1999).

In the present case, the clear language of § 1226(c), as passed in IIRIRA, indicates that it was intended to apply only prospectively. Section 1226(c), the codification of the Immigration and Nationality Act (INA) § 236(c), provides that the Attorney General shall take an alien who has committed certain specified crimes into custody "when the alien is released." Webster's Third New International Dictionary defines "when" as "just after the moment that." *Id.* at 2602 (3rd Edition 1976). Thus, the clear language of the statute indicates that the mandatory detention of aliens "when" they are released requires that they be detained at the time of release. If Congress had intended for the statute to apply retroactively to criminals released prior to its effective date, Congress could have used explicit retroactivity language or required that covered aliens be taken into custody " 'regardless of when the alien is released' or 'at anytime after the alien is released.' " *Alwaday v. Beebe,* 43 F.Supp.2d 1130, 1133 (D.Or. 1999). Given the plain language of the statute, therefore, § 1226(c) does not apply to aliens released from prison prior to the effective date of the statute. Several other courts have read the language of § 1226(c) to have similar meaning. *See e.g. Velas-*

*quez v. Reno,* 37 F.Supp.2d 663, 1999 WL 194198 (D.N.J.1999); *Alwaday,* 43 F.Supp.2d 1130; *see also Pastor–Camarena v. Smith,* 977 F.Supp. 1415, 1417 (W.D.Wash., 1997) (interpreting similar language in the transitional rules in IIRIRA).

Additionally, a clear statement within IIRIRA makes it clear that Congress intended that § 1226(c) apply prospectively to aliens released after the effective date of the statute. IIRIRA was enacted on September 30, 1996 and contained express language as to when the mandatory detention provisions would become effective. *See Velasquez,* 37 F.Supp.2d at 670–71 (citing Pub.L. 104–208, Div. C, Title III, § 303(b), Sept. 30, 1996, 110 Stat. 3009–586.) Under IIRIRA, the effective date of the mandatory detention provision of § 1226(c) could be delayed for up to two years upon the request of the Attorney General. *See id.* at 671 (citing IIRIRA § 303(b)(2)). The Attorney General chose to exercise the right to delay enactment of § 1226(c) twice, thereby delaying the effective date of § 1226(c) until October 10, 1998. *See id.*

During the two-year deferment, the "Transition Period Custody Rules" ("TPCRs") were in effect rather than the rules established by AEDPA § 440(c) or INA § 236(c). *See* IIRIRA § 303(b)(3); § 303(b)(2). "The TPCRs provided for bond hearings for some aliens removable for having committed certain crimes and gave the Immigration Court discretion to set bond if a lawfully admitted alien did not present a danger to persons or property and was likely to appear at future removal proceedings." *Velasquez,* 37 F.Supp.2d at 667 (citing IIRIRA § 303(b)(3)).

In discussing the delays allowed under the statute, Congress explicitly provided that "[a]fter the end of such 1–year or 2–year periods, the provisions of [8 U.S.C. § 1226(c)] shall apply to individuals released after such period." *Id.* (quoting IIRIRA § 303(b)(22)). Thus, explicit language in IIRIRA indicates that § 1226(c) applies only to individuals who are released after the effective date of the mandatory detention provisions. *See id.* Congress made a clear statement that the mandatory detention provisions of § 1226(c) apply only to persons released on or after October 10, 1998. *See id.; see also Alwaday,* 43 F.Supp.2d at 1133.

The government makes two arguments as to why a prospective application of § 1226(c) should not be adopted: 1) that the court should defer to the Attorney General's opinions regarding the scope of § 1226(c); and 2) that a prospective application would lead to incongruous results. The court will address these arguments in turn.

Respondents urge the court to defer to the Attorney General's interpretation of the statute, as contained in an opinion written by the BIA, *Matter of Noble,* Interim Decision No. 3301, 1997 WL 61453 (BIA 1997). In that opinion, the BIA held that § 1226(c) should apply to alien criminals released both before and after the date the statute became effective. The BIA reached this decision by relying on the legislative purpose of IIRIRA, which is the streamlining of the deportation process.

Where Congress's intent is clearly expressed, however, it must be given effect. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As noted above, Congress clearly intended that the mandatory detention provision of § 1226(c) only apply to those persons released from criminal custody after the date that the provision took effect. Accordingly, the court need not defer to the decision of the Attorney General, and rejects it since it is inconsistent with the plain wording of the statute.

The government also argues that the court's reading of the "when released" language would lead to the odd result that Congress intended that "aliens who have

escaped the INS' detection at the time of completing their sentences should be exempt from the mandatory detention provisions." *See* Government Brief at 7. The court notes, however, that the clear language of the statute indicates that Congress intended that § 1226(c) apply only to aliens who are released after the statute's effective date, and that they must be detained "when" released. Congress clearly intended that the law be applied only prospectively. As noted above, laws are strongly presumed to be prospective rather than retroactive. *See Landgraf,* 511 U.S. at 265, 114 S.Ct. 1483. The presumption against retroactivity is particularly strong in situations where retroactive application might affect unpopular groups or individuals. *See id.* at 266, 114 S.Ct. 1483. Thus, the desire to avoid passing a retroactive law that could be ruled unconstitutional provides a reasonable explanation for why Congress chose to make the law apply only prospectively.

■ Having determined that the mandatory detention rules contained in § 1226(c) only apply to persons released after October 10, 1998, the court must now turn to the issue of when petitioner was released. On February 11, 1998, petitioner was sentenced to a four year and four month suspended sentence, and placed on probation with a condition that he serve a period of time in work furlough. On September 18 or 19, 1998, petitioner violated the terms of his probation. He was released from state custody on October 21, 1998. When he was released he was immediately taken into custody by the INS.

Petitioner argues that his release on October 21, 1998 was not his actual release date because he was not in custody for the underlying criminal offense but rather that he was being held for a minor probation violation. Petitioner, therefore, argues that he was released, for the purposes of § 1226(c), in February of 1998, prior to the October 10, 1998 effective date of the mandatory detention provision of § 1226(c).

Petitioner's argument, however, is unpersuasive. Under California law, there is a "longstanding statutory rule that, when a court revokes probation, canceling the suspension of the previously imposed sentence necessarily puts that sentence into full force and effect." *See People v. Howard,* 16 Cal.4th 1081, 1093, 68 Cal.Rptr.2d 870, 946 P.2d 828 (Cal.1997). Under *Howard,* therefore, petitioner was serving time for his original crime while he was in custody during October of 1998. His release, therefore, was a release from incarceration for the predicate conviction for which he was found to be deportable. As such, the INS properly took custody of petitioner on October 21, 1998 under the mandatory detention provisions contained in § 1226(c). Under the mandatory detention provisions of § 1226(c), which became effective October 10, 1998, petitioner is not entitled to a bond determination hearing because he does not fall within the narrowly defined exceptions to detention which are found in § 1226(c)(2).

In sum, this court finds that § 1226(c) applies only to aliens who are released after the effective date of the statute, October 10, 1998. In the present case, petitioner was released on October 21, 1998; therefore the mandatory detention provisions of § 1226(c) apply to him.

### D. Due Process Challenges

Petitioner alleges that § 1226(c) violates his substantive and procedural due process rights as guaranteed by the Fifth Amendment of the U.S. Constitution. The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (citations omitted). This protection applies even to aliens who are illegally in the United States. *See Plyler v. Doe,* 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d

786 (1982). Additionally, the Supreme Court has noted that "[o]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly." *Landon v. Plasencia*, 459 U.S. 21, 31, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). The court turns, therefore, to the substantive and procedural due process claim made by petitioner.

### 1. Substantive Due Process

The Supreme Court has noted that a line of cases holds that the due process clauses of the Fifth and Fourteenth amendments have a "substantive component which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Flores*, 507 U.S. at 301–02, 113 S.Ct. 1439. In analyzing a claim where violation of a "fundamental right" is being asserted, the *Flores* court stated that " '[s]ubstantive due process' analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.' " *Id.* at 302, 113 S.Ct. 1439 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

■ In the present case, petitioner argues that he has a fundamental right to be free from detention pending a final deportation decision. A number of cases, however, indicate that the right to be free during the pendency of deportation proceedings is a lesser interest which does not trigger the highest level of judicial scrutiny. *See, e.g., Flores*, 507 U.S. at 305, 113 S.Ct. 1439; *Doherty v. Thornburgh*, 943 F.2d 204, 209 (2nd Cir.1991); *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir.1999).

In *Flores*, a group of juveniles challenged an immigration policy that required alien juveniles to be released only to their parents or legal guardians. *See id.*, 507 U.S. at 295–96, 113 S.Ct. 1439. The court defined the right at issue as being the "alleged interest in being released into the custody of strangers." *Id.* at 305, 113 S.Ct. 1439. In holding that the juveniles' interest was not a fundamental right, the court noted that they had diminished rights as juveniles and as aliens. *See id.* at 302, 305, 113 S.Ct. 1439.

Other courts have also held that the interest of aliens to be free from mandatory detention pending a final order of deportation is not a "fundamental right." In assessing the mandatory detention provisions contained in 8 U.S.C. § 1226(c), the Seventh Circuit noted that:

> [Petitioner's] legal right to remain in the United States has come to an end. An alien in [petitioner's] position can withdraw his defense of the removal proceeding and return to his native land, thus ending his detention immediately. He has the keys in his pocket. A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure the removal actually occurs.

*Parra*, 172 F.3d at 957; *see also Doherty*, 943 F.2d at 212 ("[I]f [petitioner] had agreed to deportation in the first place, he would not have been detained . . .").

Given petitioner's limited interest in being free pending a final deportation decision, this court must assess the level of scrutiny which should be applied in evaluating the constitutionality of § 1226(c). In *Flores*, the court held that strict scrutiny is only required where fundamental rights are implicated. *See Flores*, 507 U.S. at 305, 113 S.Ct. 1439. "The impairment of a lesser interest . . . demands no more than a 'reasonable fit' between governmental purpose . . . and the means chosen to advance that purpose." *Id.*

In passing § 1226(c), Congress decided that certain classes of deportable criminal

aliens will not be released while they await final orders of deportation. The classes of aliens covered by § 1226(c) "include those with multiple convictions for crimes involving moral turpitude, aggravated felons, those with controlled substance convictions, and those convicted of conspiracy to commit espionage." *Diaz–Zaldierna v. Fasano,* 43 F.Supp.2d at 1119–20. Protecting the community from potentially dangerous individuals is a legitimate governmental purpose. *See id.* (citing *U.S. v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). Additionally, holding certain groups of aliens to ensure that removal occurs is a legitimate governmental purpose. *See Parra,* 172 F.3d at 958.

In assessing whether the means used to achieve these governmental objectives is a reasonable fit, the court must examine the extensive discretion granted to the government in regulating issues relating to aliens. The court in *Flores* noted:

> For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. Over no conceivable subject is the legislative power of Congress more complete. Thus, in the exercise of its broad power over immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens. Respondents do not dispute that Congress has the authority to detain aliens suspected of entering the county illegally pending their deportation hearings. And in enacting the precursor to 8 U.S.C. § 1252(a), Congress eliminated any presumption of release pending deportation, committing that determination to the discretion of the Attorney General.

*Id.,* 507 U.S. at 305–06, 113 S.Ct. 1439 (citations omitted). Given the broad power of Congress to control the country's relationship to aliens, the fit between the governmental purpose and the provisions of § 1226(c) can be characterized as a "reasonable fit." *Id.* Congress chose only to mandatorily detain aliens who had been convicted of serious crimes. *See e.g. Diaz–Zaldierna,* 43 F.Supp.2d at 1119. It is not unreasonable for Congress to decide that aliens who have committed these crimes are more likely to evade deportation given the high likelihood that they will, in fact, be deported. *See e.g. Parra,* 172 F.3d at 958. "Section 1226(c) plainly is within the power of Congress." *Id.*

In sum, this court finds that petitioner's attenuated liberty interest may be abridged by a showing that there is a reasonable fit between § 1226(c) and the governmental purpose it seeks to achieve. This court further finds that § 1226(c) is reasonably tailored to achieve the goals that led to its enactment. Thus, § 1226(c) does not violate petitioner's substantive due process rights.

### 2. Procedural Due Process

■ Petitioner also alleges that his procedural due process rights are violated by § 1226(c) because he is not given a bond determination hearing. This claim, however, has the same infirmities which infected the substantive due process claim: petitioner's limited interest in remaining free pending a final deportation order is outweighed by the government's interest in detaining certain classes of criminal aliens. *See e.g. Diaz–Zaldierna,* supra, at 1120. As the Supreme Court in *Flores* noted "[t]his is just the 'substantive due process' argument recast in 'procedural due process' terms, and we reject it for the same reasons." *Id.,* 507 U.S. at 308, 113 S.Ct. 1439.

In determining whether a procedural due process violation has occurred, the court looks to three factors: 1) the private interest that will be affected; 2) the risk of erroneous deprivation through the procedures used; and 3) the value of additional procedural safeguards and the cost of those safeguards to the government. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

As noted above, the liberty interest of petitioner is very limited. In essence, petitioner asserts the right to be free from detention despite the fact that he is very likely to be deported and despite the fact that he could be free from detention were he to agree to be deported. *See Parra,* 172 F.3d at 957; *see also Doherty,* 943 F.2d at 212. The court in *Diaz–Zaldierna* noted that "[t]here can be no requirement of procedures for a right—here, bail during deportation proceedings—that does not exist." *Id.,* 43 F.Supp.2d at 1121. Additionally, the governmental interest in detaining certain classes of criminal aliens is very high. *See Parra,* 172 F.3d at 957. Congress intended to hold certain criminal aliens in order to ensure public safety and to ensure that deportation would occur. Conducting bond proceedings would harm those goals and could lead to higher administrative costs. In sum, the procedural due process claim must fail for the same reasons that the substantive due process claim failed: the government's interest outweighs the limited interest of deportable criminal aliens such as petitioner.

### E. Equal Protection Clause

 Petitioner also contends that his equal protection rights have been violated. Section 1226(c) in its present form went into effect on October 10, 1999. Petitioner argues that the statute is arbitrary and unjust because individuals are treated differently depending on whether the individual was released from custody before § 1226(c) took effect. Petitioner states that the statute is arbitrary because an individual released before § 1226(c) took effect would have been permitted a bond hearing while an individual released after that date cannot be awarded a bond hearing. Petitioner maintains that "the government has failed to articulate any reason why a person should be denied the right to a bond hearing based on the unfortuitous date he or she is released from state custody." Petitioner's Points & Authorities at 17–18.

This court finds that Congress' decision to apply the statute prospectively is not unconstitutionally arbitrary. Petitioner cites *Tapia–Acuna v. I.N.S.,* 640 F.2d 223 (9th Cir.1981) and *Garberding v. I.N.S.,* 30 F.3d 1187 (9th Cir.1994). These cases apply to distinctions based on the class of aliens and are inapposite. In this case, all aliens are treated uniformly under § 1226(c); petitioner simply challenges the law on the grounds that it treats individuals differently depending on whether they were in custody when the law took effect. Petitioner's reliance on *Dion v. Secretary of Health and Human Services,* 823 F.2d 669 (1st Cir.1987) is also misplaced. *Dion* involved a challenge to a statute based on its retroactive application and did not address equal protection issues.

Anytime that Congress determines when a law will take effect, there will necessarily be some line drawing. *Cf. Dobbert v. Florida,* 432 U.S. 282, 301, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). "[A]n equal protection violation occurs only when different legal standards are arbitrarily applied to similarly situated defendants." *Del Vecchio v. Illinois Dept. of Corrections,* 31 F.3d 1363, 1386 (7th Cir.1994), *cert. denied,* 514 U.S. 1037, 115 S.Ct. 1404, 131 L.Ed.2d 290 (1995). The decision to apply the statute prospectively was a rational decision. *Cf. Dobbert,* 432 U.S. at 301, 97 S.Ct. 2290. Petitioner cites to no case law indicating that it is unconstitutional for Congress to determine that a statute should take effect prospectively. Although individuals are treated differently depending on whether the new statute applies to them, this distinction is not arbitrary or irrational. Accordingly, this court finds that petitioner's equal protection claim is without merit.

### F. Request for Oral Argument

On June 18, 1999, petitioner filed a request for oral argument. Both parties have submitted briefs in support and in opposition to the petition as well as supplemental papers on selected issues. Accord-

ingly, this court finds that it is able to address the issues raised in the papers without oral argument. Pursuant to Local Rule 7.1(d)(1), this court waives oral argument.

### III. *Conclusion*

For the foregoing reasons, this court **DENIES** petitioner's application for a writ of habeas corpus.

**IT IS SO ORDERED.**